UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

HOLGER LEMA-YAUCAN,

                         Petitioner,                  **DECISION AND ORDER**

        -against-                       23 Civ. 3860 (NSR) (AEK)

SUPERINTENDENT PHILIP MELECIO,

                         Respondent.
-----------------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

Currently before the Court is Petitioner's motion to stay this habeas proceeding so that he may exhaust claims of ineffective assistance of trial counsel, prosecutorial misconduct, and actual innocence, which he intends to litigate via a motion pursuant to § 440.10 of the New York Criminal Procedure Law ("CPL").  ECF Nos. 24, 25.  For the reasons that follow, the motion is DENIED.

## BACKGROUND

On April 29, 2023, Petitioner, proceeding *pro se*, filed a petition for a writ of habeas corpus, challenging his conviction, following a jury trial, for the crimes of first-degree rape, second-degree strangulation, aggravated criminal contempt, first-degree sexual abuse, and endangering the welfare of a child.  ECF No. 1 ("Petition").[1]  The Petition raises the same two grounds for relief that Petitioner raised on direct appeal:  (1) the conviction was not supported by

---

[1] Pursuant to the prison mailbox rule, *see Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001), a habeas petition is deemed filed as of the date it was given to prison officials for mailing. According to Petitioner, he placed the Petition in the prison mailing system on April 29, 2023. *See* Petition at 15 (all citations to the Petition in this Decision and Order are to the page numbers assigned by Court's Electronic Case Filing ("ECF") system).

legally sufficient evidence; and (2) Petitioner's sentence was harsh and excessive.  Petition at 5-7, 39-58.[2]  In a letter dated October 12, 2023, Petitioner requested that this habeas proceeding be held in abeyance to address "unresolved," "off the record" matters "which require development of a court record," and noted that Petitioner's family had retained an attorney for this purpose.  ECF No. 13.  This Court "interpreted Petitioner's letter to say that he failed to fully exhaust certain claims before filing his petition," and issued an order that denied without prejudice the request for a stay.  ECF No. 14.  The order explained the legal standard governing requests for a stay of a habeas petition, specifically that "Petitioner must demonstrate that he '[1] had good cause for his failure to exhaust, [2] his unexhausted claims are potentially meritorious, and [3] there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  *Id.* at 1 (quoting *Rhines v. Weber*, 544 U.S. 269, 278 (2005)).  The Court granted Petitioner until November 10, 2023 to file a new motion for a stay that would "describe the unexhausted claims with specificity" and "explain why [Petitioner] believes the unexhausted claims have merit and how he exercised diligence in raising those claims in New York State courts."  *Id.* at 2.  Respondent was to directed file his response to that motion by December 1, 2023, and Respondent's deadline to file both his response to the Petition and the state court record was stayed pending resolution of the anticipated motion for a stay of this habeas proceeding.  *Id.*

On November 10, 2023, Petitioner filed his new motion for a stay, arguing that he needed to file a CPL § 440.10 motion to exhaust new claims of ineffective assistance of trial counsel and prosecutorial misconduct.  *See* ECF No. 15.  Petitioner alleged that his trial counsel was ineffective because he mishandled DNA evidence "negating [P]etitioner's guilt," and "failed to

---

[2] Petitioner attached to the Petition a copy of the appellate brief filed on his direct appeal. The brief included within its arguments regarding the legal sufficiency of the evidence claim an additional claim that the verdict was against the weight of the evidence.  *See* Petition at 39-54.

inform the [trial] court" that the victim purportedly "perjured herself on the witness stand." *Id.* at 2-3. He further asserted that the prosecutor did not correct the perjured testimony, and that his trial counsel also erred by failing to object to the prosecutor's failure to correct the testimony. *Id.* at 3. On the question of his diligence in seeking to exhaust these claims, Petitioner stated that his English was limited, that he was at the mercy of Spanish-speaking and bilingual inmates willing to help him understand legal matters, and that he could not seek legal assistance from other inmates without getting permission from prison administrators. *Id.* at 4.

Respondent filed a letter opposing the motion. *See* ECF No. 18. With respect to the request for a stay, Respondent argued that (1) the stay application should be denied as premature since the Petition includes no unexhausted claims, so it is not a "mixed petition" subject to the *Rhines* standard for granting a stay, *id.* at 3-4; and (2) Petitioner would in any event not be entitled to a stay under *Rhines* because (i) he cannot show either "good cause" for his failure to exhaust these claims or that the unexhausted claims are not "plainly meritless," *id.* at 4. As to good cause, Respondent contended that since the statute of limitations for filing the Petition did not expire until July 18, 2023—nearly three months after the Petition was filed—Petitioner could have filed a post-conviction motion pursuant to CPL § 440.10 to exhaust his new claims prior to filing the Petition. *Id.* Respondent noted that even as of the date of his letter (December 8, 2023), Respondent was not aware of Petitioner having filed any post-conviction motion in state court. *Id.* Respondent further argued that Petitioner's new claims were plainly meritless for a number of reasons, including that they were time-barred and did not relate back to the claims asserted in the Petition. *Id.*

This last argument was also the basis for Respondent's separate contention that the stay should not be granted because the Petition could not be amended to add the new claims. In this

regard, Respondent argued that because the proposed new claims were untimely and were supported by facts that differed in time and type from the facts supporting the original claims, they did not relate back to those claims, and the Petition could not be amended to include them. *Id.* at 8.  Respondent also argued that the Petition could not be amended to add these time-barred claims because Petitioner was not entitled to either statutory or equitable tolling of the statute of limitations, nor was he entitled to the equitable exception to the statute of limitations based on a claim of actual innocence.  *Id.* at 5-7.

While the November 10, 2023 motion for a stay was pending, Petitioner sent the Court a copy of a letter dated April 16, 2025, addressed to the New York State Commission on Judicial Conduct, complaining that he had filed a CPL § 440.10 motion in state court, but that despite numerous inquiries mailed to that court, he had never received word regarding the status of his motion.  *See* ECF No. 22.  The letter also noted that Petitioner had recently filed a motion with the state court seeking to withdraw the pending CPL § 440.10 motion without prejudice and to request to file a new CPL § 440.10 motion.  *Id.* at 1-2.  According to Petitioner, he requested written confirmation of receipt of his motion to withdraw, but only received a receipt that did not include a signature.  *Id.*  Petitioner sent a separate letter dated April 16, 2025 to the *Pro Se* Clerk of this Court, informing the Court that the state court was not acting on his CPL § 440.10 motion and his request to file a new CPL § 440.10 motion, and asking this Court to contact the state court in Rockland County to inquire as to why it was "not proceeding in a manner prescribed by law."  ECF No. 23.[3]

---

[3] Petitioner has never provided this Court with copies of his CPL § 440.10 motion or any other post-conviction filings he submitted to the state court in Rockland County.

Then, approximately one week later, on April 24, 2025, even though his November 10, 2023 motion for a stay was still pending, Petitioner filed another motion for a stay of this habeas proceeding. ECF Nos. 24-25. Now, in addition to wanting to exhaust and then amend the Petition to add the previously noted claims of ineffective assistance of trial counsel[4] and prosecutorial misconduct, Petitioner stated that he also wanted to exhaust a claim of actual innocence.[5] Stay Aff. at 2-3. With respect to the *Rhines* standard for granting a stay, Petitioner cited as "good cause" for his failure to exhaust these claims sooner the Rockland County state court's failure to respond either to his CPL § 440.10 motion or any subsequent inquiries he made regarding that motion, or to his motion to withdraw the original CPL § 440.10 motion without prejudice to filing a new one. *Id.* at 3-4. He also stated that he "cannot be faulted for a lack of due diligence, as he did everything he could do from the confines of prison to pursue his collateral review motion, pursuant to CPL 440.10, and he cannot be faulted for the Rockland County Court failing to follow the letter of the law." *Id.* at 4. Respondent has not filed anything

---

[4] In the current motion for a stay, Petitioner asserted that the ineffective assistance of trial counsel claim is based on counsel's failure to investigate "the DNA evidence showing another man's DNA being present," the failure to "adequately investigate the facts and circumstances prior to trial," the failure to "use available exculpatory evidence to impeach the complaining witness and other prosecution witnesses," the failure to "investigate the cell phone records," and

> failing to consult with an expert and failing to present such expert to
> counter the prejudicial testimony of the clinical social worker—and
> claimed psychoanalyst—where there was no corroboration of the
> complainant's incredible testimony and the alleged expert conveniently
> filled in all the gaps in the prosecution's case and wrapped . . . it all up in a
> neat little package to improperly convince the jury that petitioner was
> guilty of the trumped up charges and to drive home a guilty verdict.

ECF No. 25 ("Stay Aff.") at 3, 4, 5-6.

[5] Petitioner does not specifically state in his motion papers the basis for his claim of actual innocence.

in response to the current motion, and the Court has not heard anything further from Petitioner

with respect to the status of any state court proceedings related to his CPL § 440.10 motion.

## DISCUSSION

**I.      Because the Petition Cannot be Amended to Add the Proposed
         New Claims, the Request for a Stay Must Be Denied**

While it is arguable that the *Rhines* standard for granting a stay does not apply where, as

here, the Petition is not "mixed," *see Curran v. Keyser*, No. 19-cv-4196 (CS) (LMS), 2020 WL

3318128, at *4 (S.D.N.Y. June 18, 2020)[6] (citing *Escalera v. Lempke*, No. 15-cv-00674 (MAT),

2018 WL 3342572, at *1 (W.D.N.Y. July 9, 2018) ("Courts in this Circuit have disagreed over

whether petitioners seeking to exhaust new claims may seek a stay under *Rhines*.")), that is

immaterial to the analysis here because Petitioner would not be permitted to amend the Petition

to add the proposed new claims even after his CPL § 440.10 motion is fully adjudicated in the

state courts.  Accordingly, there is no basis to grant a stay of this habeas proceeding, and the

proceeding will move forward based on the claims asserted in the Petition.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-

year limitations period for the filing of a federal habeas petition that, as relevant here, begins to

run from the date on which the underlying state court judgment of conviction becomes final by

the conclusion of direct review or the expiration of the time for seeking such review.  28 U.S.C.

§ 2244(d)(1)(A).  In this case, the Appellate Division, Second Department affirmed Petitioner's

judgment of conviction on direct appeal on March 2, 2022, *People v. Lema-Yaucan*, 203 A.D.3d

---

[6] In accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), and Local Civil Rule
7.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts
of New York, copies of this case and other cases that are unpublished or only available by
electronic database are being simultaneously mailed to the *pro se* Petitioner along with this
Decision and Order.

754 (N.Y. App. Div. 2022), and leave to appeal was denied by the New York Court of Appeals on April 18, 2022, *People v. Lema-Yaucan*, 38 N.Y.3d 1008 (2022).  Because Petitioner did not file a petition for a writ of certiorari seeking review of the New York state court decision in the United States Supreme Court, his conviction became final on July 18, 2022, 90 days after the order denying his application for leave to appeal to the New York Court of Appeals.  *See McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003).  Accordingly, Petitioner had until July 18, 2023 to file his habeas petition.

Petitioner timely filed the Petition on April 29, 2023.  He did not file a CPL § 440.10 motion prior to filing the Petition, nor did he file a CPL § 440.10 motion prior to the expiration of the AEDPA one-year limitations period.  *See* ECF No. 15 at 4 (noting that as of November 10, 2023, Petitioner was seeking a stay of this proceeding so that he could file a CPL § 440.10 motion).  Accordingly, the claims that Petitioner is seeking to add to the Petition are untimely, in that they were first proposed after the AEDPA statute of limitations expired.  For the reasons set forth below, there is no basis to allow these untimely claims to be added back to the Petition, even if Petitioner were to exhaust the claims in the state courts.

> **A.** **The Petition Cannot Be Amended Pursuant to Rule 15 of the Federal Rules of Civil Procedure Because the New Claims Do Not Relate Back to the Claims in the Petition**

Although Respondent contended in his opposition to the November 10, 2023 motion for a stay that the proposed new claims were untimely, *see* ECF No. 18 at 5, Petitioner did not address this issue in his current motion for a stay.  Rather, Petitioner cited 28 U.S.C. § 2242, which states that habeas petitions may be amended "as provided in the rules of procedure applicable to civil actions," and argued that he may amend the Petition pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.  *See* Stay Aff. at 5.  But where, as here, a proposed amendment to a habeas

petition is offered after the AEDPA statute of limitations has expired, such an amendment is only permissible if the proposed new claims "relate back" to the original Petition within the meaning of Rule 15(c) of the Federal Rules of Civil Procedure. *See, e.g., Nash v. Griffin*, No. 13-cv-6150 (KMK) (LMS), 2017 WL 3769323, at *5 (S.D.N.Y. Aug. 30, 2017) ("A petitioner may amend his [or her] habeas petition to include additional claims only if those claims are timely under [the] AEDPA or if the claims 'relate back' to the original claims, pursuant to Rule 15(c) of the Federal Rules of Civil Procedure."); *Cordova-Diaz v. Brown*, No. 10-cv-5133 (CM) (KNF), 2011 WL 4060086, at *2 (S.D.N.Y. Sept. 14, 2011) ("Where, as here, a petitioner wishes 'to amend his petition long after the one-year statute of limitations had run, he [is] required to show that his amended petition relates back in accordance with Rule 15(c).'" (quoting *Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 816 (2d Cir. 2000) (alteration in *Cordova-Diaz*)). Rule 15(c) provides that an amendment "relates back to the date of the original pleading when" it would add a claim "that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); *see Mayle v. Felix*, 545 U.S. 644, 655 (2005). In the habeas context, relation back requires that "the original and amended petitions state claims that are tied to a common core of operative facts." *Mayle*, 545 U.S. at 664. An amended habeas claim "does not relate back (and thereby escape [the] AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650. An amended claim does not relate back to the original petition simply because it arises out of the same "trial, conviction, or sentence." *Id.* at 664 (quotation marks omitted).

Here, the Petition raises only two claims: (1) that the conviction was not supported by legally sufficient evidence; and (2) that the sentence imposed was harsh and excessive. *See*

Petition at 5-7, 39-58.  In the current motion for a stay, Petitioner states that he wants to exhaust three claims:  "(1) ineffective assistance of trial counsel for failing to adequately investigate the facts and circumstances prior to trial and for failing to use available exculpatory evidence to impeach the complaining witness and other prosecution witnesses; (2) prosecutorial misconduct in allowing the complaining witness to give false testimony and for failing to correct that false testimony; and (3) actual innocence of the charges he was convicted of."  Stay Aff. at 2-3.

As an initial matter, it is clear that none of the proposed new claims relate to the excessive sentence claim in the Petition—none of the proposed new claims refer to Petitioner's sentence in any way.  Therefore, the only question is whether any of the proposed new claims "relate back" to the claim that Petitioner's conviction was not supported by legally sufficient evidence.

First, as to Petitioner's proposed claim regarding his actual innocence, it is "an open question" whether a freestanding claim of actual innocence is cognizable in a federal habeas proceeding at all.  *See Jimenez v. Stanford*, 96 F.4th 164, 183 (2d Cir. 2024).  But even a "gateway" claim of actual innocence—which can allow a petitioner to avoid the AEDPA statute of limitations[7]—"must be supported by *new reliable evidence*—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—*that was not presented at trial*."  *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012) (quotation marks omitted) (emphases added).  Consequently, there is no way that any claim of actual innocence raised by Petitioner would be "tied to a common core of operative facts" with the legal sufficiency claim

---

[7] "[A]ctual innocence, if proved, serves as a gateway" to obtain federal habeas review of otherwise time-barred claims.  *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).

asserted in the Petition, because the legal sufficiency claim, by its own terms, is focused on the evidence that was presented at trial.

Second, Petitioner's ineffective assistance of trial counsel claim is based on his counsel's alleged failures to (i) investigate DNA evidence that would negate Petitioner's guilt; (ii) inform the trial court of the victim's perjured testimony; (iii) object to the prosecutor's failure to notify the trial court regarding the perjured testimony; (iv) adequately investigate the facts and circumstances prior to trial; (v) use available exculpatory evidence to impeach the victim and other prosecution witnesses; (vi) investigate cell phone records; and (vii) consult with, and present at trial, an expert to counter the prosecution's expert. *See* ECF No. 15 at 2-3; Stay Aff. at 3, 4, 5-6.[8]

In contrast to the legal sufficiency claim in the Petition—which concerns whether, based on the evidence presented at trial, when viewed in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt," *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (cleaned up)—the proposed new ineffective assistance of counsel claim is based on matters outside the trial record, such as trial counsel's purported failures to investigate certain evidence in advance of trial, as well as counsel's trial strategy, including counsel's approach to questioning witnesses and decision not to consult with an expert or present an expert witness at trial. Meanwhile, the portion of the potential ineffective assistance claim concerning counsel's handling of the allegedly perjured testimony relates to what trial counsel knew about that testimony and why counsel handled that issue the way it was handled at trial. The legal sufficiency and ineffective assistance of counsel

---

[8] The Court considers all of the statements made and arguments raised by Petitioner in both the November 10, 2023 motion for a stay and the current motion for a stay filed on April 24, 2025.

claims are therefore not "tied to a common core of operative facts."  Rather, the ineffective

assistance of counsel claim is "supported by facts that differ in both time and type from those the

original pleading set forth," *Mayle,* 545 U.S. at 650, and therefore would not relate back to the

legal sufficiency claim in the original Petition.

Third, Petitioner's prosecutorial misconduct claim is based on the prosecution allegedly

allowing the victim to perjure herself and then failing to inform the trial court of the perjury.  *See*

ECF No. 15 at 3; Stay Aff. at 3.  The facts underlying this claim also relate to whether

prosecutors knew that the victim was perjuring herself and how they acted in response to the

victim providing false testimony.  Again, this claim is "supported by facts that differ in both time

and type" from the legal sufficiency claim, and would not relate back to the legal sufficiency

claim.[9]

In sum, because Petitioner's proposed new claims do not relate back to the claims in the

original Petition, Petitioner would not be permitted to amend the Petition to add these claims,

even if he were to fully exhaust the claims in the state courts after filing a CPL § 440.10 motion.

---

[9] Moreover, Petitioner cannot overcome the untimeliness of his proposed new ineffective assistance of counsel and prosecutorial misconduct claims based on a gateway claim of actual innocence, which "must be both 'credible' and 'compelling.'"  *Rivas* , 687 F.3d at 541.  Such a claim requires a showing of "new reliable evidence," and also requires a demonstration "that more likely than not, in light of the new evidence, no reasonable juror would find [the petitioner] guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt."  *Id.* (quotation marks omitted).  In this case, any possible gateway claim of actual innocence cannot succeed due to Petitioner's failure to make any proffer of "new reliable evidence" of actual innocence.  *See Jeffrey v. Capra*, No. 20-cv-232 (RPK), 2020 WL 4719629, at *4 n.1 (E.D.N.Y. Aug. 12, 2020) (finding that none of the petitioner's submissions in connection with his stay-and-abeyance motion "suggest petitioner can clear [the] high bar" for overcoming the statute of limitations based on a claim of actual innocence).  All of Petitioner's arguments are predicated on items of evidence that existed at the time of trial but that, in Petitioner's view, were not used appropriately by his trial counsel.  There is no indication that Petitioner has any "new" evidence regarding his case.

Accordingly, there is no need to stay this habeas proceeding to allow for a potential future amendment following the completion of any further state court litigation.

> **B.** **Petitioner Is Not Entitled to Equitable Tolling of the AEDPA Limitations Period to Allow His Untimely Additional Claims to Be Added to the Petition**[10]

In opposition to Petitioner's November 10, 2023 motion for a stay, Respondent further contended that Petitioner was not entitled to equitable tolling of the statute of limitations with respect to his proposed new claims. The Court agrees.

To be eligible for equitable tolling, a petitioner must show that (1) extraordinary circumstances prevented him or her from filing the petition on time, and (2) the petitioner acted with reasonable diligence throughout the period he or she seeks to toll. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (*per curiam*); *see Holland v. Florida*, 560 U.S. 631, 649 (2010). "The word 'prevent' requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his

---

[10] As noted above, in his opposition to the November 10, 2023 motion, Respondent also argued that Petitioner was not entitled to statutory tolling of the limitations period as to the proposed new claims. ECF No. 18 at 5. The Court agrees. Under the AEDPA, the one-year limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). Since Petitioner did not file any applications for post-conviction relief prior to the expiration of the one-year statute of limitations, he is not entitled to tolling of the statute of limitations on this basis. *See Moise v. Fields*, No. 19-cv-11964 (VSB) (RWL), 2021 WL 5316133, at *5 (S.D.N.Y. Sept. 20, 2021) ("In order to toll the statute of limitations, a state court collateral motion must be pending *during* the limitations period; a state court collateral action filed after the period has expired has no tolling effect.") (emphasis in original), *adopted by* 2021 WL 6133992 (S.D.N.Y. Dec. 29, 2021); *see* ECF No. 15 at 4.

Additionally, Respondent contended that Petitioner was not entitled to the equitable exception to the statute of limitations afforded by a gateway claim of actual innocence. ECF No. 18 at 7. As explained in footnote 9, *supra*, Petitioner has failed to make the requisite showing to support a viable gateway claim of actual innocence and thus cannot avoid application of the one-year statute of limitations on this basis.

[or her] filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000).

The United States Court of Appeals for the Second Circuit has explained that "[a]s a general matter, [courts] set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling.  Whether a circumstance is extraordinary is based not on how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather, how severe an obstacle it is for the prisoner endeavoring to comply with [the] AEDPA's limitations period." *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011) (cleaned up).  "It is exceedingly rare for courts in the Second Circuit to find that extraordinary circumstances exist." *Hernandez v. Khahaifa*, No. 10-cv-6582 (KMK), 2013 WL 3984958, at *13 (S.D.N.Y. July 31, 2013) (cleaned up).

Petitioner did not argue that he was entitled to equitable tolling in either his November 10, 2023 motion for a stay or the current motion for a stay.  In response to Petitioner's initial request for a stay, the Court's October 24, 2023 order stated that Petitioner could file a new motion to address the *Rhines* standard and that this submission should "explain why [Petitioner] believes the unexhausted claims have merit and how he exercised diligence in raising those claims in New York State courts."  ECF No. 14 at 2.  Accordingly, in the November 10, 2023 motion, Petitioner noted, seemingly by way of explanation for why he filed the Petition without first exhausting the proposed new claims, that he was given "erroneous advice" by a law library clerk in his facility regarding the deadline for filing the Petition, which caused him to "hastily" file the Petition "in late March of 2023."  ECF No. 15 at 1-2.[11]  And in the context of explaining

---

[11] The Petition was actually filed on April 29, 2023.  *See* footnote 1, *supra*.

his diligence in raising the unexhausted claims, Petitioner cited his "limited [E]nglish proficiency," that he was "mostly at the mercy of Spanish speaking . . . or Bilingual incarcerated individuals in order to fully comprehend this matter," and that he was "not allowed to seek out legal assistance from any incarcerated individuals without first seeking and obtaining permission from prison administrators." *Id.* at 4.[12]

Viewing these arguments in the context of the standard for equitable tolling, Petitioner has failed to demonstrate that these were "extraordinary circumstances" that prevented him from raising his proposed new claims within the statute of limitations and that he acted with reasonable diligence throughout the relevant period.

As a general matter, "[c]ourts have rejected lack of access to legal services, illiteracy, lack of English fluency, and ignorance of the law as extraordinary circumstances that effectively prohibit a petitioner from pursuing habeas relief." *Marte v. Brown*, No. 09-cv-1036 (RJS) (KNF), 2010 WL 1644271, at *3 (S.D.N.Y. Apr. 21, 2010) (cleaned up); *see also*, *e.g.*, *Joaquin v. Smith*, No. 21-cv-9372 (PAE) (SLC), 2022 WL 18956531, at *6 (S.D.N.Y. Dec. 30, 2022), ("The law is clear, however, that equitable tolling cannot be premised on a litigant's lack of education, *pro se* status, or ignorance of the right to bring a claim.") (cleaned up), *adopted by*

---

[12] In the current motion for a stay, in which Petitioner addressed the *Rhines* standard and the standard for amending a habeas petition, he stated that he "cannot be faulted for a lack of due diligence, as he did everything he could do from the confines of prison to pursue his collateral review motion, pursuant to CPL 440.10, and he cannot be faulted for the Rockland County Court failing to follow the letter of the law." Stay Aff. at 4. But acting with diligence in contacting the state court in Rockland County *after* filing the CPL § 440.10 motion, which was itself already filed at least several months past the expiration of the AEDPA one-year statute of limitations (although Petitioner does not provide an exact date), does not establish that Petitioner acted with diligence in the period leading up to the filing of the CPL § 440.10 motion. Moreover, anything that the state court in Rockland County did or did not do with respect to Petitioner's CPL § 440.10 motion once it was filed was not an "extraordinary circumstance" that prevented him from timely filing the motion within the limitations period in the first place.

2023 WL 2237798 (S.D.N.Y. Feb. 27, 2023); *Horton v. McCoy*, No. 11-cv-0034 (WMS), 2012 WL 34071, at *5 (W.D.N.Y. Jan. 5, 2012) ("courts have consistently found that circumstances such as indigency, and ignorance of the law and legal procedures, are not sufficiently 'extraordinary' to merit equitable tolling"); *Lewis v. Walsh*, No. 03-cv-1932 (DC), 2003 WL 21729840, at *2 (S.D.N.Y. July 25, 2003) ("[A] lack of knowledge of the law is not in any way rare, extraordinary, or unusual—indeed, it is probably the rule rather than exception among prisoners."). More specifically, with respect to Petitioner's assertion that he received erroneous advice from another inmate regarding the deadline for filing the Petition, "relying on the misinformation of prison law clerks does not justify equitable tolling." *Marte*, 2010 WL 1644271, at *4 (citing cases); *see also Trovato v. Kaplan*, No. 11-cv-6092 (VB) (GAY), 2012 WL 7060608, at *3 (S.D.N.Y. Dec. 19, 2012) ("A prisoner's reliance on the misinformation of prison law clerks or other inmates is insufficient to result in an equitable tolling of the limitation period.") (citing cases), *adopted by* 2013 WL 636956 (S.D.N.Y. Feb. 11, 2013). Accordingly, even if Petitioner was given erroneous advice about the deadline for filing the Petition, that does not constitute an extraordinary circumstance excusing his failure to include the unexhausted claims in the Petition or file a CPL § 440.10 motion—either before or at the same time as filing the Petition, or during the three-month period between the filing of the Petition and the expiration of the statute of limitations. Importantly, it is apparent from the Petition itself that Petitioner knew the correct date for the expiration of the statute of limitations—he wrote that his "appeal to the New York State Court of Appeal[s] was denied on 4/18/2022, which is final 90 days after 4/18/2022, which is 7/18/2022, therefore, the one-year period of limitation shall apply to petitioner['s] application for a writ of habeas corpus (see enclosed copy of Court of Appeals decision)." Petition at 14.

15

Moreover, "[a]n inability to speak or understand English has consistently been rejected by courts in this Circuit as a basis to equitably toll the statute of limitations." *Coronel v. United States*, No. 12-cv-8673 (SAS), 2013 WL 765321, at *1 (S.D.N.Y. Feb. 28, 2013) (quotation marks omitted) (citing cases). As the Second Circuit explained in *Diaz v. Kelly,* "the diligence requirement of equitable tolling imposes on the prisoner a substantial obligation to make all reasonable efforts to obtain assistance to mitigate his [or her] language deficiency." 515 F.3d 149, 154 (2d Cir. 2008). In *Diaz*, the petitioners "claimed nothing more than the unavailability of personnel within their prisons who could translate for them during the applicable limitations periods." *Id.* Because there was "no allegation of any efforts to contact anyone outside the prison who might assist in making [the petitioners] aware, in their language, of legal requirements for filing a habeas corpus petition, nor what efforts were made to learn of such requirements within their places of confinement," the Second Circuit held that the district court properly rejected the petitioners' claims of entitlement to equitable tolling. *Id.* Here, Petitioner makes only conclusory statements regarding his language deficiency. He does not explain what efforts he made to obtain assistance to mitigate such deficiency, nor does he claim that prison officials denied him permission, or otherwise prevented him from seeking language assistance from anyone either inside or outside his correctional facility. Petitioner has thus failed to demonstrate that he made "all reasonable efforts to obtain assistance to mitigate his language deficiency." *Id.*

Furthermore, despite Petitioner's language deficiency and purported ignorance of the law and legal procedures, he was able to file the Petition approximately three months before the expiration of the statute of limitations, yet for unexplained reasons, he did not include the unexhausted claims in the Petition. Nor has Petitioner provided any explanation for why he was

16

unable to file a CPL § 440.10 motion in state court either before filing the Petition, at or around

the same time he filed the Petition, or within the three-month period after he filed the Petition but

before the expiration of the AEDPA one-year statute of limitations.

*       *       *       *       *       *

In sum, because there is no basis to permit the Petition to be amended to add the proposed

new claims, there is no reason to grant a stay of this habeas proceeding while Petitioner exhausts

those claims in state court.

## II.      The *Rhines* Standard for Granting a Stay

As noted above, the *Rhines* standard for granting a stay to allow for exhaustion of a claim

in state court requires Petitioner to demonstrate that he "[1] had good cause for his failure to

exhaust, [2] his unexhausted claims are potentially meritorious, and [3] there is no indication that

the petitioner engaged in intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 278.  Here,

Petitioner cannot satisfy this standard, because whatever merit Petitioner's claims may have in

state court under state law, his proposed new claims are plainly lacking in merit from the

perspective of this federal habeas proceeding "because they are time barred and do not relate

back to the claims asserted in Petitioner's present petition." *Martinez v. Mariuscello*, No. 16-cv-

7933 (RJS), 2017 WL 2735576, at *2 (S.D.N.Y. June 23, 2017); *see also Jeffrey*, 2020 WL

4719629, at *4 ("Relation-back principles counsel against a stay here.  Even if [the court]

granted petitioner a stay so that he could pursue unexhausted claims in state court, petitioner

would be unable to amend his habeas petition to obtain review of those new claims now that the

statute of limitations for federal habeas relief has expired."); *Curran*, 2020 WL 3318128, at *4

("[G]ranting a stay in this case would be inappropriate since the new claim for ineffective

17

assistance of counsel is dismissible as time-barred.").  For this reason alone, even if the Court

considers the merits of the motion to stay under the *Rhines* standard, the motion must be denied.

**CONCLUSION**

For the foregoing reasons, Petitioner's motion for a stay (ECF No. 24) is DENIED.

Respondent is directed to file and serve (1) an answer, motion, or other response to the Petition,

and (2) the transcripts and briefs identified in Rule 5(c) of the Rules Governing Section 2254

Cases in the United States District Courts, **by no later than May 15, 2026**.  Petitioner's reply

papers, if any, must be served and filed **by no later than June 15, 2026**.

The Clerk of Court is respectfully directed to mark the motion at ECF No. 24 as

DENIED.

The Clerk of Court is also respectfully directed to update Petitioner's contact information

on the docket to list his mailing address as **Collins Correctional Facility, Middle Road, P.O.**

**Box 340, Collins, NY 14034-0340**.  This is the facility at which Petitioner is currently housed,

according to the New York State Department of Corrections and Community Supervision

website.  *See Incarcerated Lookup*, New York State Department of Corrections and Community

Supervision (last visited Mar. 16, 2026) [https://perma.cc/9VCT-3HB7].

Dated:  March 16, 2026
　　　　White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge

A copy of this Decision and Order has been mailed by Chambers to the *pro se* Petitioner
at Collins Correctional Facility.

18